

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00102-CV

**GONZALES NURSING OPERATIONS, LLC** f/d/b/a Texan Nursing & Rehab of Gonzales,
Appellant

v.

Alta Mae **SMITH**, Rosie L. Smith, Alton Allen, Jr., A.B. Allen, David L. Allen, Melvin L.
Allen, Individually and on Behalf of the Estate of Nannie B. Allen, Deceased,
Appellees

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-14718
Honorable Laura Salinas, Judge Presiding[1]

Opinion by:     Beth Watkins, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: September 23, 2020

DISMISSED FOR LACK OF JURISDICTION

     Appellant Gonzales Nursing Operations, LLC, f/d/b/a Texan Nursing & Rehab of Gonzales

("Gonzales") appeals the trial court's denial of its plea to the jurisdiction. We dismiss this appeal

for lack of jurisdiction.

---

[1] The Honorable Antonia Arteaga is the presiding judge of the 57th Judicial District Court. The Honorable Laura Salinas signed the order at issue in this appeal.

## BACKGROUND

Appellees Alta Mae Smith, Rosie L. Smith, Alton Allen, Jr., A.B. Allen, David L. Allen, and Melvin L. Allen (collectively, "Smith") are the children of Nannie B. Allen. Nannie was a resident of Texan Nursing and Rehab ("Texan"), a nursing home in Gonzales, Texas. On December 24, 2016, Nannie fell from her bed at Texan and fractured her left femur while she was being cared for by a nursing assistant, Shelby Molina. Smith alleges Molina tried to move Nannie from her bed alone even though Nannie's care plan required at least two people to perform that task. On January 11, 2017, Nannie died due to complications from her injury.

Gonzales is a limited liability company that manages Texan on behalf of and pursuant to a written contract with Gonzales Healthcare System ("GHS"). That contract describes GHS as "a governmental entity and body politic established pursuant to Chapter 1032 of the Texas Special District Local Laws Code." It provides, inter alia:

> In the performance of its duties hereunder, [Gonzales] shall be and act as an independent contractor, with the sole duty to supervise, manage, operate, control and direct the performance of [Texan] for the benefit of [GHS] and subject to the ultimate authority and control of [GHS] and other restrictions described herein.

The contract also provides: Gonzales "shall be responsible for providing all personnel necessary to operate" Texan and "shall have complete control over such personnel"; GHS "shall have no authority to hire, supervise, direct, train or control in any manner the personnel required to be provided by" Gonzales; and "[n]one of the personnel provided pursuant to this Agreement or assigned to [Texan] shall be employees of" GHS.

Smith filed this lawsuit against Gonzales on August 7, 2018 and amended her petition several times. In those amendments, she added both GHS and Molina as defendants. Smith ultimately amended her petition to exclude GHS as a defendant.

Smith's live petition, which asserts claims only against Gonzales and Molina, alleges Molina's negligence proximately caused Nannie's death. Smith also alleges Gonzales is responsible for Molina's negligent acts because she committed those acts in the course and scope of her employment with Gonzales. While a previous version of Smith's petition alleged Molina was the employee of Gonzales "and/or" GHS, her live petition contends Molina is employed by Gonzales alone.

On November 16, 2018, Gonzales filed a plea to the jurisdiction. In its plea, Gonzales argued that because it is "an independent contractor which acts under the direction and ultimate control of" GHS, it "effectively acted as GHS in all matters related to the operation of Texan" and "should, therefore, share the sovereign immunity afforded to GHS." It also argued that because Smith once alleged Molina was the employee of Gonzales and/or GHS, her "attempt to sue Shelby Molina after [she] had already sued GHS was foreclosed" under section 101.106 of the Texas Civil Practice and Remedies Code. Smith responded that Gonzales is not a governmental unit and its contract with GHS does not entitle it to share in GHS's governmental immunity.

On March 16, 2020, the trial court signed an order denying Gonzales's plea to the jurisdiction. Gonzales timely filed this interlocutory appeal.

### ANALYSIS

Gonzales argues the trial court erred by denying its plea to the jurisdiction. Smith responds, inter alia, that we lack jurisdiction to consider Gonzales's appeal of the trial court's interlocutory order because Gonzales is not a governmental entity.

#### Standard of Review and Applicable Law

A reviewing court has a duty to inquire into its own jurisdiction, even if it must do so *sua sponte. See Castle & Cooke Mortg., LLC v. Diamond T Ranch Dev., Inc.*, 330 S.W.3d 684, 687 (Tex. App.—San Antonio 2010, no pet.). If the record does not affirmatively show we have

jurisdiction, we have no option but to dismiss the appeal. *Nikolouzos v. St. Luke's Episcopal Hosp.*, 162 S.W.3d 678, 681 (Tex. App.—Houston [14th Dist.] 2005, no pet.). We review questions of our own jurisdiction de novo. *IFS Sec. Grp., Inc. v. Am. Equity Ins. Co.*, 175 S.W.3d 560, 562 (Tex. App.—Dallas 2005, no pet.).

We generally lack jurisdiction to consider appeals of interlocutory orders. *See Orion Real Estate v. Sarro*, 559 S.W.3d 599, 602 (Tex. App.—San Antonio 2018, no pet.). However, "[a] person may appeal from an interlocutory order . . . that . . . grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in [Texas Civil Practice and Remedies Code] Section 101.001." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8). Section 101.001 defines "governmental unit" as:

> (A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;
>
> (B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;
>
> (C) an emergency service organization; and
>
> (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3). Like questions of jurisdiction, we review questions of statutory construction de novo. *See Maverick Cty. Hosp. Dist. v. Martin*, 376 S.W.3d 163, 166 (Tex. App.—San Antonio 2012, pet. denied).

*Application*

Gonzales does not claim it is a state agency, a political subdivision of the state, or an emergency service organization. *See* TEX. CIV. PRAC. & REM. CODE § 101.001(3). As a result, of the four definitions of "governmental unit" listed in Section 101.001, the only relevant one is Subsection D. *See id.* "'To be a governmental unit under [Subsection (D), an entity] must (1) be an institution, agency, or organ of government and (2) derive its status and authority as such from laws passed by the Legislature.'" *Orion*, 559 S.W.3d at 602–03 (quoting *Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 909 (Tex. 2017)) (internal quotation marks omitted).

Gonzales cites no constitutional or statutory provision from which it derives its claimed status as a "governmental unit." *See id.* at 603. Instead, it contends its contractual relationship with GHS and its duty to comply with laws applicable to nursing homes mandate a conclusion that its "authority and power . . . emanate from legislative command." As support for this proposition, it relies on *City of Leon Valley Economic Development Corp. v. Little*, 422 S.W.3d 37 (Tex. App.—San Antonio 2013, no pet.). However, the appellant in *Little* was an "economic development corporation" created under a provision of the Texas Local Government Code, and its "powers, privileges, and functions [were] specified and circumscribed by statute." *See Little*, 422 S.W.3d at 40. Because Gonzales has not alleged or presented any evidence showing it derives its authority to operate Texan from a legislative act,[2] *Little*'s analysis does not apply here. *See id.* at 40–41.

Gonzales cites no authority holding that either a contractual relationship with a governmental unit or a duty to comply with applicable laws, without more, transforms a contractor into an "institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." TEX.

---

[2] The contract between GHS and Gonzales states Gonzales operated Texan "prior to the Sublease [of Texan] to [GHS]."

CIV. PRAC. & REM. CODE § 101.001(3). We therefore reject Gonzales's assertion that its contract with GHS renders it a "governmental unit" under section 101.001(3).

Gonzales concedes that Texas Health and Safety Code section 285.071 "has not been referenced in the instant case." However, because we must sua sponte evaluate our own jurisdiction, we note the Legislature has provided that a "hospital district management contractor" is considered a governmental unit under some circumstances. *See* TEX. HEALTH & SAFETY CODE ANN. § 285.072. However, the Legislature specifically limited the application of that statute to "a nonprofit corporation, partnership, or sole proprietorship that manages or operates a hospital or provides services under contract with a hospital district that was created by general or special law." TEX. HEALTH & SAFETY CODE ANN. § 285.071. Under the plain language chosen by the Legislature, a limited liability company cannot be a hospital district management contractor. Here, Gonzales's contract with GHS specifically identifies it as a limited liability company, and Gonzales presented no evidence to controvert that recital. For that reason, Gonzales cannot qualify as a hospital district management contractor—and therefore a governmental unit—under section 285.072. *See SJ Med. Ctr., LLC v. Estahbanati*, 418 S.W.3d 867, 875 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Having concluded Gonzales does not meet the definition of a "governmental unit" here, we must re-evaluate our jurisdiction in this matter. *See, e.g.*, *Orion*, 559 S.W.3d at 603. Appellate courts generally only have jurisdiction over appeals from final judgments. *See id.* at 602. Texas Civil Practice and Remedies Code section 51.014(a)(8) represents a narrow exception to that rule, authorizing an interlocutory appeal from an order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

Gonzales cites *Brown & Gay Engineering v. Olivares*, 461 S.W.3d 117 (Tex. 2015) and *Nettles v. GTECH Corp.*, 603 S.W.3d 63 (Tex. 2020), for the proposition that this court has jurisdiction over an appeal brought by "an independent contractor claiming derivative sovereign immunity." However, neither *Brown & Gay* nor *Nettles* explicitly considered whether the independent contractors in those cases qualified as "governmental units" under sections 101.001(3) and 51.014(a)(8) of the Texas Civil Practice and Remedies Code. *See generally Nettles*, 603 S.W.3d at 65–76; *Brown & Gay*, 461 S.W.3d at 119–29.

Because Gonzales is not a governmental unit, we lack jurisdiction over this interlocutory appeal. *See Orion*, 559 S.W.3d at 603 (dismissing interlocutory appeal after rejecting argument that appellant was a governmental unit); *Baylor Scott & White v. Peyton*, 549 S.W.3d 242, 256 (Tex. App.—Fort Worth 2018, no pet.) (same). As a result, we must dismiss this appeal for lack of jurisdiction.

**CONCLUSION**

We dismiss this appeal for lack of jurisdiction.

Beth Watkins, Justice
